**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION**

**ALPHONSO A. PERRY,**
**Plaintiff,**

**v.** **No: 3:06cv454/RV/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
**Defendant.**

---

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Perry's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and Supplemental Security Income benefits which were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held on August 23, 2005 at which plaintiff was represented by counsel and testified. The ALJ rendered an unfavorable decision on October 27, 2005 (tr. 17-28), and the Appeals Council declined review (tr. 5-8), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had not engaged in significant gainful employment during the relevant period; that he had severe impairments that did not meet or medically equal the impairments listed in the regulations; that his claimed limitations were not entirely credible; that he had the residual functional capacity to perform sedentary work; that he was a younger individual with a tenth grade education and no transferrable skills; and that he was not disabled as defined in the Act

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial

evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?
4. Does the individual have any impairments which prevent past relevant work?
5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

On June 4, 2003, plaintiff presented to the emergency room with complaints of chest pain. On examination, his heart rate and rhythm were regular without murmurs, he had normal breath sounds, and he was not in respiratory distress (tr. 145). A chest x-ray revealed no abnormalities (tr. 150). He received a Toradol injection, his chest pain resolved, and he was discharged in stable condition (tr. 145-46).

On June 20, 2003, plaintiff saw Karen G. Snow, M.D., complaining of pain in his chest, left arm, and back. Dr. Snow noted plaintiff had been to the emergency room earlier that month, at which time an echocardiogram revealed a normal left ventricular function but some left ventricular hypertrophy. On examination, plaintiff had full range of motion in all his extremities, and he had no edema throughout (tr. 170). His blood pressure was 130/80, and his heart rate and rhythm were regular with no murmurs or gallops. He reported significant left anterior chest wall tenderness on palpation. Dr. Snow recommended a stress test, started plaintiff on Lisinopril, and referred him for pain management (tr. 170). A subsequent cardiolite GXT stress test was normal (tr. 199). On June 22, 2003, plaintiff returned to the emergency room with continued complaints of chest pain. His blood pressure was

**145/84. He received a nitroglycerin injection and was discharged that afternoon in good condition (tr. 159).**

**On July 25, 2003, plaintiff returned to Dr. Snow. His blood pressure was 120/96, and he was not having any side effects with his medication. On examination, there was some mild left cervical and upper thoracic paraspinal and trapezius muscle tenderness, but no palpable spasms. Plaintiff continued to have full range of motion in his neck and in all his extremities. His extremities were also without edema and were neurovascularly intact. Dr. Snow assessed left thoracic strain, referred plaintiff for physical therapy, and ordered cervical and thoracic spine x-rays (tr. 168). On August 20, 2003, plaintiff told Dr. Snow he was thinking about filing for disability. Dr. Snow noted that he was a good candidate for vocational rehabilitation, and she continued his hypertension medications (tr. 167).**

**On September 27, 2003, plaintiff completed a disability worksheet, in which he reported that he had sharp pains in his chest, back, shoulders, legs, and arms, but that his pain medications provided him relief (tr. 110, 115). He also acknowledged that his pain did not prevent him from cooking, doing laundry, performing home repairs, and going shopping (tr. 110-11).**

**On November 5, 2003, plaintiff returned to Dr. Snow with complaints of uncontrolled hypertension and chest pain. On examination, his blood pressure was 122/72. Dr. Snow prescribed Lisinopril and Norvasc for chest pain and hypertension (tr. 201). On December 1, 2003, plaintiff complained to Dr. Snow of frequent heartburn. On examination, his blood pressure was 134/80, his lungs were clear, and his heart rate and rhythm were regular with no murmurs or gallops. Dr. Snow assessed dyspepsia and hypertension, and prescribed Lisinopril, Norvasc, and Protonix (tr. 200). On January 5, 2004, plaintiff complained of left-side chest pressure and dyspnea on exertion. His blood pressure was 148/98, and an electrocardiogram revealed a normal sinus rhythm with no acute STT wave changes.**

**Dr. Snow assessed hypertension, atypical chest pain, and dyspepsia. Plaintiff was continued with his prescriptions for Lisinopril, Norvasc, and Protonix (tr. 199).**

**On March 29, 2004, plaintiff returned to Dr. Snow with complaints of pain and swelling in his neck, upper back, and right knee. Dr. Snow noted that recent x-rays did not really show any degenerative disc disease. On examination, plaintiff's blood pressure was 132/82, he had full range of motion throughout his extremities, and he had no significant extremity or joint edema (tr. 198).**

**An April 19, 2004 MRI of the mid back revealed only minor spondylosis, no herniated nucleus pulposus, and no significant central canal or foraminal stenosis (tr. 208). An April 19, 2004 MRI of the neck revealed degenerative disc desiccation and spondylosis throughout, mild disc bulging at C5-6 and C6-7, no herniated nucleus pulposus, and no significant central canal stenosis (tr. 209). An April 19, 2004 right-knee x-ray revealed no abnormalities (tr. 210).**

**On June 14, 2004, plaintiff saw Dr. Snow for follow-up on his hypertension (tr. 230). He also complained of neck pain caused by bulging discs and degenerative disc disease. On examination, blood pressure was 130/62 and Dr. Snow continued his Norvasc for hypertension and Protonix for indigestion (tr. 230). Plaintiff returned on July 21, 2004 with complaints of severe left-side chest pain that radiated into his left shoulder and arm. He also complained of shortness of breath, nausea, and chills. On examination, plaintiff appeared well-developed and not in acute distress. His oxygen saturation rate was 98 percent or greater, his heart rate was 62, and his blood pressure was 117/60. His chest was also clear to auscultation, he had no chest wall tenderness, he moved his extremities well, and he had no clubbing or edema throughout his extremities. A chest x-ray was also unremarkable for any acute process, and an electrocardiogram showed a normal sinus rhythm with no acute changes (tr. 229, 257).**

**On May 2, 2005, plaintiff complained of headaches, insomnia, left-arm tingling,**

**and upper neck and thoracic back pain. Dr. Snow noted plaintiff was not taking pain medication and had done quite well. On examination, his blood pressure was 136/98, and he had a good muscular build and full range of motion in all his extremities. He also did not have palpable tenderness in his paraspinal muscles. Dr. Snow ordered MRI examinations, and prescribed Benicar and Protonix (tr. 226). A May 7, 2005 cervical spine MRI revealed mild degenerative disc disease throughout, no focal disc herniation, and multi-level bilateral neural foraminal narrowing (tr. 222). A May 7, 2005 thoracic spine MRI revealed minimal degenerative disc disease and a small central disc protrusion at T7-8, but there was no evidence to suggest significant canal stenosis (tr. 223). On June 6, 2005, Dr. Snow noted that the MRIs showed degenerative disc disease, and that plaintiff was taking Ultram for pain relief. On examination his blood pressure was 130/88, and he was continued on Benicar and Protonix. Dr. Snow also referred him to a neurosurgeon (tr. 224).**

**Based on a diagnosis of degenerative arthritis and intervertebral disc disorder with myelopathy, Dr. Snow opined that plaintiff could sit only seven hours and stand or walk only one hour in an eight-hour day; and that he could sit, stand, and walk only one hour at a time. She further opined that plaintiff could lift 10 pounds frequently and 50 pounds occasionally; that he could occasionally bend, squat, crawl, and reach, but never climb; and that he needed to avoid driving automobile equipment and his exposure to temperature extremes, humidity extremes, dust, fumes, and gases was mildly restricted (tr. 205). On July 20, 2005, Dr. Snow completed a second RFC assessment, in which she opined that plaintiff could sit, stand, and walk for only two hours in an eight-hour day, and that plaintiff could lift and carry 20 pounds frequently and 50 pounds occasionally. She further opined that plaintiff could only occasionally bend and squat, and never climb or crawl; that he needed to avoid mild exposure to extreme temperatures, extreme humidity, dust, fumes, and gases; and that he could perform only moderate automobile driving (tr.**

**231).**

**On June 27, 2005, plaintiff presented to Charles E. Chapleau, M.D., a neurosurgeon, for evaluation of his cervical impairment. After reviewing the May 2005 cervical spine MRI, Dr. Chapleau opined that plaintiff's most significant pain was likely due to the C5-6 spurring. On examination, his heart rate and rhythm were regular, he had good range of motion in his lower back and shoulders, and his grip strength was intact. Dr. Chapleau recommended that he undergo an anterior cervical fusion at C5-6 with allograft and plate (tr. 240), and on July 13, 2005, Dr. Chapleau performed this procedure, which plaintiff tolerated well (tr. 235). On July 21, 2005, plaintiff returned to Dr. Chapleau for follow-up on his cervical fusion. He reported having had excellent relief of his pain. Plaintiff's staples were removed, and Dr. Chapleau told him to return in three weeks (tr. 234).**

**Plaintiff was also seen by Richard W. Lucey, M.D. on January 12, 2004 for a consultative disability examination. Plaintiff's blood pressure was 160/90, his lungs were clear, and his heart rate and rhythm were regular. He had full range of motion in his neck, a mild decrease in range of motion in his left shoulder, normal grip strength and fine manipulative movements, and no weakness, atrophy, or sensory deficits in his upper extremities. He also had full range of motion throughout his lower extremities, his gait was normal, and he could heel-and-toe and tandem walk without evidence of weakness or ataxia. Dr. Lucey assessed hypertension, probable degenerative disc disease, probable arthritis in his neck, left upper extremity, and right knee, and non-cardiac chest pain (tr. 171-76).**

**At the August 23, 2005 hearing, plaintiff testified that he lived with his wife and their teenage son (tr. 350). His medications helped relieve his pain, but he still had problems with his blood pressure (tr. 352). He could bathe, dress, and groom himself, and he usually spent his days watching television, lying down, and occasionally walking around the block (tr. 358-59, 363). He lies down because there**

**"ain't nothing else to do." (Tr. 363). Finally, he testified that he could not return to work because of shortness of breath, high blood pressure, and problems bending (tr. 362).**

**DISCUSSION**

**The plaintiff argues that the ALJ erred in failing specifically to identify those conditions which he found to be severe, and in relying on the medical/vocational guidelines rather than the testimony of a vocational expert, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.**

**1. Failure to identify severe conditions.**

**Plaintiff first contends that the ALJ erred in not specifically identifying those of plaintiff's conditions which he found to be "severe." He contends that this was necessary at step 2 of the sequential process, and that failure to do so requires reversal. Defendant contends that although the ALJ admittedly did not identify the conditions he found to be severe, the regulations require the ALJ to consider *all* conditions, so remand is not necessary.**

**In his decision, the ALJ included the following:**

> **The medical evidence indicates that the claimant has impairments that are severe within the meaning of the Regularions but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.**
>
> *** * ***
>
> **The claimant, in documentation of record, has alleged an enlarged heart, high blood pressure, chest pain and degenerative disc disease as a basis of disability. The undersigned concludes that, while the record contains evidence of the existence of these impairments, the**

> **objectively demonstrable evidence of record fails to support that the claimant *is impaired as he has alleged*.**

**(Tr. 19, 23). Since the ALJ found that plaintiff was not impaired *as he alleged* after specifically enumerating the conditions of which plaintiff complained, it is clear that the ALJ considered all the conditions noted by the plaintiff.**

**Moreover, the court has reviewed the record with care. As the ALJ noted, plaintiff claimed an enlarged heart, high blood pressure, chest pain and degenerative disc disease as the bases of his disability. The medical record demonstrates that these are the conditions for which plaintiff was treated by his physicians. Since there were no other conditions claimed by plaintiff or treated by his physicians, it is certain that the listed conditions are the only ones relevant here. It is also certain that the ALJ found that plaintiff was not disabled by the conditions he claimed to have caused his disability, so it is equally certain that the ALJ considered *all* the listed conditions. Therefore, and given the overall content and context of the ALJ's decision, it is obvious that he considered all the listed conditions as potentially severe. Consequently, any error was harmless.**

**2. Use of medical/vocational guidelines.**

**Plaintiff also contends that the ALJ erred in applying the medical/vocational guidelines rather than calling a vocational expert. In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00. "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983). However,"where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that**

particular case …." 20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.

In the present case the ALJ applied grid rule 201.24, which directs a finding of not disabled for a person who (1) is a younger individual (18-44 years of age), (2) has a residual functional capacity for sedentary work, (3) with limited or less education, and (4) is either unskilled (201.24) or skilled (201.25). The plaintiff argues that the application of the grids was inappropriate due to the lack of evidence demonstrating his ability to perform a full range of sedentary work and because of the non-exertional limitation of pain.

The Commissioner has defined sedentary work as involving

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ found that plaintiff could perform the exertional and non-exertional demands of the full range of sedentary work. Thus, plaintiff's argument that he suffered debilitating pain would have force if the ALJ had accepted his claim of such pain, but the ALJ rejected that claim. Given, as the ALJ noted, the lack of abnormal clinical findings (other than a disc protrusion successfully repaired by Dr. Chapleau), normal EKG's, normal blood pressure when plaintiff was compliant with his medications, Dr. Snow's statement that plaintiff was a candidate for vocational rehabilitation, plaintiff's doing well without pain medication, and his overall normal physical examinations, the ALJ's ultimate finding is supported by substantial record evidence

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

**At Pensacola, Florida, this 31st day of August, 2007.**

/s/ Miles Davis

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**